UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
BENTON DIVISION

| | |
|---|---|
| Goldie Troutt, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>- against -<br><br>Mondelēz Global LLC,<br><br>Defendant | 3:21-cv-01279<br><br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1. Mondelēz Global LLC ("defendant") manufactures, labels, markets, and sells Shortbread Cookies under the Lorna Doone brand ("Product").



2. Other versions of the packaging describe the Product as "An American Tradition Since 1912," which provides a "Melt in your Mouth Taste."



3. The brand name, "Lorna Doone," was the name of a character in the 1869 Scottish romance novel written by R.D. Blackmore.

4. The representations are misleading because the Product's ingredients are inconsistent with what consumers expect from a food identified as "shortbread cookies."

## I. DEFINITION OF SHORTBREAD

5. Shortbread originated in Scotland, and derived its name from its short, or crumbly, structure, caused by the high proportion of fat, in the form of butter.

6. Unlike other biscuits or baked goods, shortbread does not contain leavening, such as baking powder or baking soda.

7. Dictionary.com defines shortbread as a "a butter cookie commonly made in thick,

2

pie-shaped wheels or rolled and cut in fancy shapes."

8. Lexico, from Oxford Dictionary, calls it a "crisp, rich, crumbly type of cookie made with butter, flour, and sugar."

9. The Cambridge Dictionary describes a type of sweet cookie that contains a lot of butter.

10. Collins Dictionary defines it as a kind of cookie made from flour, sugar, and butter.

11. Google Dictionary – based on its leading search engine that discovers the most relevant and accurate information – defines shortbread as a crisp, rich, crumbly type of cookie made with butter, flour, and sugar.

12. Other dictionaries define it as "[A] cookie made of flour, sugar, and much butter or other shortening" and "a hard sweet cookie made with a large amount of butter."

## II.  FAT OR "SHORTENING" INGREDIENTS ARE ESSENTIAL TO SHORTBREAD

13. Shortbread is usually made from one-part white sugar, two parts shortening (butter), and three to four parts plain wheat flour.

14. Shortening interferes with the formation of gluten strands in pastries. It makes the strands shorter, contributing to the tender, crumbly texture.

15. Shortbread is known for its high fat content, which inhibits gluten, allowing the dough to rise.

16. Gluten gives dough a chewy texture, which is inconsistent with the desired crumbly texture for shortbread.

17. Eventually, "the proportions of one part sugar, two parts butter, and three parts flour became more or less canonical, while yeast and eggs disappeared from shortbread recipes altogether."

18. The fat ingredients are typically butter or vegetable shortening.

19. Since the time butter was first discovered, there have been attempts to imitate it with cheaper substitutes.

20. Since the late 19th century, this has been in the form of vegetable oils, i.e., margarine.

21. Vegetable oil ingredients like palm oil, are solid at room temperature, and referred to as "hard [vegetable] fats."

22. Butter's rich taste is because milkfat contains hundreds of lactones, or aroma compounds.

23. Vegetable fats do not contribute to the flavor of shortbread cookies, because they are theoretically "refined, bleached and deodorized."

24. However, these ingredients are subject to reversion where they contribute off-odors to foods.

25. One popular recipe website emphasizes the importance of butter to shortbread, advising to use only butter and not margarine or other vegetable oils, because this negatively affects not only the taste but the crumbly texture.

### III. STATE AND FEDERAL REGULATIONS REQUIRE FRONT LABEL TO IDENTIFY PRODUCT AS SOMETHING OTHER THAN SHORTBREAD

26. Federal and identical state regulations require a product's front label to contain a common or usual name which accurately identifies or describes, "in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients." 21 C.F.R. § 102.5(a); Illinois Food, Drug and Cosmetic Act ("IFDCA"), 410 ILCS 620/1 et seq.; 410 ILCS 620/21(j) ("federal [food labeling] regulation[s] [are] automatically adopted").

27. Defendant's representations violate 21 U.S.C. § 343(a)(1) and 410 ILCS 620/11, which deem a food misbranded when the label contains a statement that is "false or misleading."

4

28. The Illinois Consumer Fraud and Deceptive Business Practices Act provides protection for consumers purchasing items like the Product, and states:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression, or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . are hereby declared unlawful

815 ILCS 505/2.

29. Whether a food identified as shortbread is made with the expected ingredients such as butter and excluding leavening is basic front label information consumers rely on when making quick decisions at the grocery store.

30. The Product's ingredient list reveals it is inconsistent with what consumers expect from shortbread cookies, as shown by (1) the absence of butter, (2) shortening provided exclusively from vegetable oils – canola oil and palm oil, and (3) the use of baking soda.

**INGREDIENTS:** UNBLEACHED ENRICHED FLOUR (WHEAT FLOUR, NIACIN, REDUCED IRON, THIAMINE MONONITRATE {VITAMIN B1}, RIBOFLAVIN {VITAMIN B2}, FOLIC ACID), SUGAR, CANOLA OIL, PALM OIL, CORN FLOUR, SALT, HIGH FRUCTOSE CORN SYRUP, BAKING SODA, SOY LECITHIN, CORNSTARCH, ARTIFICIAL FLAVOR.

31. The result of substituting vegetable oils for butter, and adding baking soda, is a Product which lacks the nutritional, organoleptic, and sensory attributes of shortbread.

32. The Product's representations are misleading because its common or usual name,

5

"Shortbread Cookies," fails to include a statement that the characterizing butter ingredient is absent. *See* 21 C.F.R. § 102.5(c)(1)-(3).

33. The front label fails to inform consumers that if they want "Shortbread Cookies," they will have to supply their own butter, and somehow remove the baking soda.

34. The presence of butter has a material bearing on price and consumer acceptance of the Product.

35. The front label creates an erroneous impression that the Product contains ingredients associated with, and expected from shortbread, such as butter, and does not contain leavening.

36. Federal and state regulations require that the front label disclose the absence of butter through a statement such as "Contains No Butter" or "Does Not Contain Butter," directly below the Product's common or usual name, in boldfaced type:

Shortbread Cookies

**Contains No Butter**

37. The substitution of palm oil and canola oil for butter reduces costs.

38. The pictures of the Product, along with its name, and its claim about melting in your mouth, causes consumers to expect it will contain butter, as expected from shortbread.

39. The Product's representation that it provides the "Melt In Your Mouth" taste is false and misleading.

40. First, vegetable oils do not melt at mouth temperature, and leave a waxy mouthfeel.

41. Butter melts at mouth temperature and does not contribute to a waxy sensation.

42. Second, the Product contains artificial flavor, which imitates the flavor of butter.

43. Shortbread cookies have a characterizing flavor of butter, which requires that the addition of any artificial flavor which resembles the characterizing flavor be disclosed on the front label, i.e., "Artificially Flavored," in conjunction with the name of the Product. *See* 21 C.F.R. §

101.22(i)(2).

44. Consumers expect that companies – especially larger and respected businesses, like Mondelez, to tell them the truth, not half-truths.

45. Consumers of the Product will not be so distrustful to scrutinize the fine print of the ingredient list to confirm the front label is or is not accurate.

46. The front label does not tell consumers they are getting a "Shortbread-Style Cookie" or a "Shortbread Flavored Cookie," but a "Shortbread Cookie."

47. Shortbread cookies made with the expected ingredients are not a rare or pricy delicacy that would make a reasonable consumer "double check" to confirm the presence of butter by scouring the packaging.

48. These products exist in the marketplace and are not technologically or otherwise unfeasible to produce, as made by the Walker Company.

49. Moreover, even if some brands of shortbread cookies contain a small amount of vegetable oil, Defendant's Product has *only* vegetable oil and no butter.

## IV.  CONCLUSION

50. Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes, and features of a product, relative to itself and other comparable products or alternatives.

51. By labeling the Product in this manner, Defendant gained an advantage against other companies, and against consumers seeking to purchase a product which contained ingredients expected of shortbread and did not contain ingredients not expected in shortbread.

52. The value of the Product that plaintiff purchased was materially less than its value as represented by defendant.

53. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

54. Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

55. The Product is sold for a price premium compared to other similar products, no less than approximately $3.79 for three packages of three cookies (4.5 OZ or 129g), a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

56. Similar products which have an equivalent amount and/or proportion of shortbread ingredients are sold for a lower price of approximately $3.29 for three packages of three cookies (4.5 OZ or 129g).

## Jurisdiction and Venue

57. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

58. The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

59. Plaintiff Goldie Troutt is a citizen of Illinois.

60. Defendant Mondelēz Global LLC is a Delaware corporation with a principal place of business in East Hanover, Morris County, New Jersey and upon information and belief, at least one member of defendant is not a citizen of the same state as the plaintiff.

61. Defendant's managing member is Mondelēz International, Inc., a Virginia corporation with a principal place of business in New Jersey.

62. Plaintiff and defendant's managing member are citizens of different states.

63. Defendant transacts business within this district, through the marketing, supply, and

sales of its products at thousands of stores within this district and sold online to citizens of this district.

64. Venue is in this district because plaintiff resides in this district and the actions giving rise to the claims occurred within this district.

65. Venue is in the Benton Division of this District because a substantial part of the events or omissions giving rise to the claim occurred in Richland County, i.e., Plaintiff's purchase of the Product and her awareness of the issues described here.

## Parties

66. Plaintiff Goldie Troutt is a citizen of Olney, Richland County, Illinois.

67. Plaintiff likes shortbread because it has a crumbly, rich texture and butter taste.

68. Defendant Mondelēz Global LLC, is a Delaware corporation with a principal place of business in East Hanover, New Jersey, Morris County.

69. The forerunner of Mondelez was the National Biscuit Company, formed in 1898 from a merger of over 100 bakeries in the country.

70. Nabisco, as it was called, revolutionized packaged snacks through wrapping which maintained freshness and kept out debris.

71. Prior to this, crackers were sold loose in a barrel, which is where the term "cracker barrel" comes from.

72. Nabisco introduced numerous staples of American pantries, including Oreo Cookies, Barnum's Animal Crackers, Honey Maid Grahams, Ritz crackers, Wheat Thins, Saltines, and Chips Ahoy.

73. Nabisco was the second largest advertiser after tobacco companies for much of its history, which created a great reservoir of public trust.

9

74. Nabisco, and its successor, Defendant, emphasizes its commitment to quality products, labeled honestly, in support of giving workers the value they deserve.

75. These facts show a company with a significant amount of goodwill and equity when it comes to consumer purchasing.

76. The Product is available from almost everywhere packaged food is sold, from convenience stores at gas stations, grocery stores, specialty markets, warehouse clubs, and sold online.

77. Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, from stores including Walmart, 1001 N West, Olney, IL 62450, between June and July 2021, among other times.

78. Plaintiff bought the Product because she expected it contained ingredients expected of shortbread and did not contain ingredients not expected in shortbread because that is what the front label and other representations said and implied.

79. Plaintiff relied on the words and images on the labels, identified here.

80. Plaintiff bought the Product at or exceeding the above-referenced price.

81. Plaintiff expected the Product to contain butter and no leavening, and that if it had vegetable oils, this would be present in a *de minimis* or negligible amount, instead of only containing vegetable oils.

82. Plaintiff would not have purchased the Product if she knew the representations were false and misleading or would have paid less for it.

83. Plaintiff chose between Defendant's Product and other similar products which were represented similarly, but which did not misrepresent their attributes and/or lower-priced products which did not make the statements and claims made by Defendant.

84. The Product was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

85. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's representations are consistent with its composition.

86. Plaintiff is unable to rely on the labeling of this, and other Mondelez brand products, which means she buys fewer Mondelez brand items than before being aware of this issue, which causes her to spend more money buying other brands.

87. Plaintiff wants to resume purchasing Mondelez brand products in the same amount as she previously did.

Class Allegations

88. Plaintiff seeks certification under Fed. R. Civ. P. 23(b)(2) and (b)(3) of the following classes:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged.
>
> **Consumer Fraud Multi-State Class:** All persons in the States of North Dakota, Kansas, West Virginia, Wyoming, and Delaware, who purchased the Product during the statutes of limitations for each cause of action alleged

89. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

90. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

91. Plaintiff is an adequate representative because her interests do not conflict with other members.

92. No individual inquiry is necessary since the focus is only on defendant's practices

and the class is definable and ascertainable.

93. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

94. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

95. Plaintiff seeks class-wide injunctive relief because the practices continue.

Illinois Consumer Fraud and Deceptive Business Practices Act
("ICFA"), 815 ILCS 505/1, et seq.

(Consumer Protection Statute)

96. Plaintiff incorporates by reference all preceding paragraphs.

97. Plaintiff and class members desired to purchase a product that contained ingredients expected of shortbread and did not contain ingredients not expected in shortbread.

98. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

99. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

100. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

101. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

102. Plaintiff relied on the representations and omissions that the Product was a shortbread cookie, and she expected it would have butter (and not have leavening).

103. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts

(On Behalf of the Consumer Fraud Multi-State Class)

104.   The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

105.   Defendant intended that plaintiff and each of the other members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

106.   As a result of defendant's use or employment of artifice, unfair or deceptive acts or business practices, plaintiff, and each of the other members of the Consumer Fraud Multi-State Class, have sustained damages in an amount to be proven at trial.

107.   In addition, defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

Breaches of Express Warranty,
Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

108.   The Product was manufactured, identified, and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it contained ingredients expected of shortbread and did not contain ingredients not expected in shortbread.

109.   Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

110.   This duty is based on Defendant's outsized role in the market as a trusted brand, as described above, which means consumers expect it to be different than other companies without such a storied and respected history.

111.   Plaintiff provided or will provide notice to defendant, its agents, representatives,

retailers, and their employees.

112. Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

113. The Product did not conform to its affirmations of fact and promises due to defendant's actions and was not merchantable because it was not fit to pass in the trade as advertised.

114. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Negligent Misrepresentation

115. Defendant had a duty to truthfully represent the Product, which it breached.

116. This duty is based on defendant's position, holding itself out as having special knowledge and experience in this area, as the world's leading manufacturer of cookies and snack foods.

117. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, the leading specialty grocery store in the nation.

118. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

119. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Fraud

120. Defendant misrepresented and/or omitted the attributes and qualities of the Product,

that it contained ingredients expected of shortbread and did not contain ingredients not expected in shortbread.

121. Moreover, the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provide it with actual and/or constructive knowledge of the falsity of the representations.

122. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

## Unjust Enrichment

123. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;
2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;
3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;
4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;
5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and

    experts; and

6. Other and further relief as the Court deems just and proper.

Dated: October 19, 2021

                                    Respectfully submitted,

                                    Sheehan & Associates, P.C.
                                    /s/Spencer Sheehan
                                    60 Cuttermill Rd Ste 409
                                    Great Neck NY 11021
                                    Tel: (516) 268-7080
                                    spencer@spencersheehan.com