UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
BENTON DIVISION

| | |
|---|---|
| Goldie Troutt, individually and on behalf of all others similarly situated,<br><br>　　　　　　　Plaintiff,<br><br>　　- against -<br><br>Mondelēz Global LLC,<br><br>　　　　　　　Defendant | 3:21-cv-01279-SPM<br><br><br>First Amended<br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1.　　Mondelēz Global LLC ("Defendant") manufactures, labels, markets, and sells shortbread cookies under the Lorna Doone brand ("Product").



2.　　The representations are misleading to consumers, in part, because despite an expectation that shortbread contains some butter, the Product contains no butter.

I.　　**SHORTBREAD BACKGROUND**

3.　　Shortbread originated in Scotland and the Product's labeling is evocative of these origins.

4. The name, "Lorna Doone," is the name of a character in an 1869 Scottish novel by R.D. Blackmore.

5. The label's interlocking yellow and white stripes are referred to as a tartan and are part of Scotch culture.

6. The high fat content of shortbread, in the form of butter, inhibits gluten, allowing the dough to rise, contributing to its "short" or crumbly texture.

7. All forms of baked goods identified as shortbread are based on sugar, shortening which includes some butter, and flour.

8. Dictionary.com defines shortbread as a "a butter cookie commonly made in thick, pie-shaped wheels or rolled and cut in fancy shapes."

9. Lexico from Oxford Dictionary defines shortbread a "crisp, rich, crumbly type of cookie made with butter, flour, and sugar."

10. The Cambridge Dictionary describes shortbread as a type of sweet cookie that contains a lot of butter.

11. Collins Dictionary defines shortbread as a cookie made from flour, sugar, and butter.

12. Google Dictionary defines shortbread as a crisp, rich, crumbly type of cookie made with butter, flour, and sugar.

13. Other dictionaries define it as "[A] cookie made of flour, sugar, and much butter or other shortening" and "a hard sweet cookie made with a large amount of butter."

14. Commercial treatises define shortbread consistently with mainstream dictionaries.

15. In *Biscuit Manufacture: Fundamentals of In-Line Production*, P.R. Whitely emphasized that that while shortbread is not required to only have butter, it must have a significant percentage of butter relative to any other shortening ingredients.

16. Nicholas Malgieri, author of "How to Bake" by Harper Collins, concurred with Whitely's analysis, noting, "You can't make shortbread without butter."

17. One amateur food writer noted that most experts have agreed that whether shortbread is made commercially or in one's kitchen, butter is essential.

18. A popular recipe website emphasizes the importance of butter to shortbread, advising to use only butter and not vegetable oils, because this negatively affects not only the taste but the crumbly texture.

19. A layperson reviewing the Product on Amazon.com was critical, asking rhetorically, "How can you make shortbread without butter?"

20. Vegetable oils are used to substitute for butter in numerous foods, from baking to applying to bread.

21. Vegetable oils cost less than butter, which allows companies to save money.

22. Vegetable oils are unable to provide the structural, organoleptic, nutritional, and sensory properties to shortbread that butter does.

II. **PRODUCT LACKS SHORTBREAD INGREDIENTS**

23. Consumers expect that a food identified as shortbread contains some butter.

24. However, the Product's ingredient list reveals the absence of butter.

**INGREDIENTS:** UNBLEACHED ENRICHED FLOUR (WHEAT FLOUR, NIACIN, REDUCED IRON, THIAMINE MONONITRATE {VITAMIN B1}, RIBOFLAVIN {VITAMIN B2}, FOLIC ACID), SUGAR, CANOLA OIL,

3

> PALM OIL, CORN FLOUR, SALT, HIGH FRUCTOSE CORN SYRUP, BAKING SODA, SOY LECITHIN, CORNSTARCH, ARTIFICIAL FLAVOR.

25. In place of butter, the Product's shortening is from the vegetable oils of "CANOLA OIL [and] PALM OIL," the third and fourth ingredients, after flour and sugar.

26. The result of substituting vegetable oils for butter is that the Product lacks the nutritional, structural, organoleptic, and sensory attributes of shortbread.

### III. PRODUCT ADDS ARTIFICIAL FLAVOR TO IMITATE BUTTER

27. Federal and identical state regulations require that the source of a food's characterizing, or most significant and promoted flavor, be disclosed prominently to consumers.

28. That the Product's characterizing flavor is butter is confirmed by independent sources which confirm, as Cully's Kitchen stated, "[T]he flavor of Shortbread is buttery."

29. This is because butter's taste is due to its hundreds of lactones or aroma compounds.

30. Wendy Sondow of The Monday Box noted "something about the rich, buttery flavor of shortbread" that she found soothing.

31. Eating Expired describes "[T]he flavor of shortbread [a]s buttery."

32. Where a food contains any artificial flavor that imitates its characterizing flavor, this must be disclosed on the front label. *See* 21 C.F.R. § 101.22(i)(2).

33. The Product adds artificial butter flavor to imitate the taste of shortbread and butter.

34. The label violates federal and state regulations by not stating, "Artificially Flavored Shortbread Cookies" on the front label. 21 C.F.R. § 101.22(i)(2).

### IV. OTHER SHORTBREAD COOKIES CONTAIN BUTTER

35. The front label does not tell consumers they are getting a cookie in the style, type, or

4

flavor of shortbread, but a shortbread cookie.

36. Shortbread cookies made with some butter are not a rare or pricy delicacy.

37. Such products exist in the marketplace and are not technologically or economically prohibitive to produce.

38. Some shortbread cookies highlight being made with butter.

39. For instance, Favorite Day brand from Target sells "Butter Shortbread" cookies described as "made with real butter."



**INGREDIENTS:** ENRICHED WHEAT FLOUR (WHEAT FLOUR, NIACIN, REDUCED IRON, THIAMIN MONO-NITRATE, RIBOFLAVIN, FOLIC ACID), SALTED BUTTER (CREAM, SALT), POWDERED SUGAR (CANE SUGAR, CORN STARCH), VANILLA, SEA SALT.

40. The ingredients in the Favorite Day shortbread cookies list only butter for shortening.

41. Walkers emphasizes butter through the product name of "Pure Butter Shortbread."



5



**INGREDIENTS:**
*WHEAT FLOUR, BUTTER, SUGAR, SALT*

42. The ingredients in Walkers Pure Butter Shortbread list only butter for shortening.

43. However, other shortbread cookies that are made with butter do not reference or highlight butter on their front label, because manufacturers and consumers understand and expect shortbread to be made with butter.

44. For instance, the front label of Dublin Shortbread by Pepperidge Farm does not reference or highlight butter.



**MADE FROM:** ENRICHED WHEAT FLOUR (FLOUR, NIACIN, REDUCED IRON, THIAMINE MONONITRATE, RIBOFLAVIN, FOLIC ACID), BUTTER, SUGAR, FRUCTOSE, CONTAINS 2% OR LESS OF: NONFAT MILK, EGG WHITES, SALT, BAKING SODA, NATURAL FLAVOR, SOY LECITHIN.

45. However, the ingredients list only butter for shortening.

6

46. Other shortbread cookies may not contain butter as the exclusive shortening ingredient but will contain some butter.

47. In contrast, the Product has no butter and uses artificial butter flavor to imitate butter.

## V.   CONCLUSION

48. Defendant makes other representations and omissions with respect to the Product which are false and misleading.

49. Reasonable consumers must and do rely on a company to honestly and lawfully market and describe the components, attributes, and features of a product, relative to itself and other comparable products or alternatives.

50. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

51. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

52. Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

53. The Product is sold for a price premium compared to other similar products, no less than approximately $3.79 for three packages of three cookies (4.5 OZ or 129g), excluding tax and sales, a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

54. Similar shortbread products with an equivalent amount and/or proportion of shortbread ingredients are sold for a lower price of approximately $3.29 for the same amount of product.

55. The Product's price is similar to or greater than certain shortbread products which

contain butter.

## Jurisdiction and Venue

56. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

57. The aggregate amount in controversy exceeds $5 million, including any statutory, punitive, and other damages, exclusive of interest and costs.

58. Plaintiff Goldie Troutt is a citizen of Illinois.

59. Defendant Mondelēz Global LLC is a Delaware limited liability company with a principal place of business in East Hanover, Morris County, New Jersey.

60. The membership of Mondelēz Global LLC consists of Mondelēz International, Inc., a Virginia corporation with a principal place of business in Chicago, Illinois.

61. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen

62. The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold with the representations described here, in thousands of locations, in the states covered by Plaintiff's proposed classes.

63. The Product is available to consumers from grocery stores, dollar stores, warehouse club stores, drug stores, convenience stores, big box stores, and online.

64. Venue is in the Benton Division in this District because a substantial part of the events or omissions giving rise to these claims occurred in Richland County, including Plaintiff's purchase, consumption, and/or use of the Product and awareness and/or experiences of and with the issues described here.

Parties

65. Plaintiff Goldie Troutt is a citizen of Olney, Richland County, Illinois.

66. Defendant Mondelēz Global LLC is a Delaware limited liability company with a principal place of business in East Hanover, New Jersey, Morris County.

67. The predecessor of Mondelēz was the National Biscuit Company ("Nabisco"), formed in 1898 from a merger of over 100 bakeries.

68. Nabisco revolutionized packaged snacks through wrapping which maintained freshness and kept out debris.

69. Prior to this, crackers were sold loose in a barrel, which is where the term "cracker barrel" comes from.

70. Nabisco introduced numerous staples of American pantries, including Oreo Cookies, Barnum's Animal Crackers, Honey Maid Grahams, Ritz crackers, Wheat Thins, Saltines, and Chips Ahoy.

71. Nabisco was one of the largest advertisers for much of its history, which created a great reservoir of public trust.

72. Nabisco emphasized its commitment to quality products, labeled honestly, in support of giving workers the value they deserve, which Defendant continues to do.

73. These facts show a company with a significant amount of goodwill and equity when it comes to consumer purchasing.

74. The Product is available to consumers from grocery stores, dollar stores, warehouse club stores, drug stores, convenience stores, big box stores, and online.

75. Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at stores including Walmart, 1001 N West, Olney, IL

62450, between June and July 2021, among other times.

76. Plaintiff believed and expected the Product contained ingredients expected of shortbread, like some amount of butter, instead of not having any butter, and believed that the shortbread taste was provided by butter, instead of artificial flavor, because that is what the representations and omissions said and implied, on the front label and the absence of any reference or statement elsewhere on the Product.

77. Through reading and understanding the Product's labeling, including the identification as shortbread cookies, the Scottish themes, and awareness of the use of butter in shortbread cookies, Plaintiff expected the Product contained some butter instead of vegetable oils and artificial butter flavor.

78. Plaintiff relied on the words, terms coloring, descriptions, layout, placement, packaging, tags, and/or images on the Product, on the labeling, statements, omissions, claims, statements, and graphics, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

79. Plaintiff bought the Product at or exceeding the above-referenced price.

80. Plaintiff would not have purchased the Product if she knew the representations and omissions were false and misleading or would have paid less for it.

81. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, features, and/or components.

82. The Product was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

83. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so

with the assurance the Product's representations are consistent with its attributes, features, representations and/or composition.

84. Plaintiff is unable to rely on the labeling and representations not only of this Product, but other similar shortbread cookies, because she is unsure whether those representations are truthful.

## Class Allegations

85. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of North Dakota, Kansas, West Virginia, Wyoming, and Delaware, who purchased the Product during the statutes of limitations for each cause of action alleged.

86. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

87. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

88. Plaintiff is an adequate representative because her interests do not conflict with other members.

89. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

90. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

91. Plaintiff's counsel is competent and experienced in complex class action litigation

11

and intends to protect class members' interests adequately and fairly.

<u>Illinois Consumer Fraud and Deceptive Business Practices Act<br>
("ICFA"), 815 ILCS 505/1, et seq.</u>

(Consumer Protection Statute)

92. Plaintiff incorporates by reference all preceding paragraphs.

93. Plaintiff believed the Product contained ingredients expected of shortbread, like some amount of butter, instead of not having any butter, and believed that the shortbread taste was provided by butter, instead of artificial flavor.

94. Defendant's false, misleading and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

95. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

96. Plaintiff relied on the representations and omissions to believe the Product contained ingredients expected of shortbread, like some amount of butter, instead of not having any butter, and believed that the shortbread taste was provided by butter, instead of artificial flavor.

97. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Violation of State Consumer Fraud Acts</u>

<u>(On Behalf of the Consumer Fraud Multi-State Class)</u>

98. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

99. The members of the Consumer Fraud Multi-State Class reserve their rights to assert

their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

100.  Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct.

101.  As a result of Defendant's use of artifice, and unfair or deceptive acts or business practices, the members of the Consumer Fraud Multi-State Class sustained damages.

102.  Defendant's conduct showed motive and a reckless disregard of the truth such that an award of punitive damages is appropriate.

### Breach of Express Warranty

103.  The Product was manufactured, identified, marketed and sold by Defendant and expressly and impliedly warranted to Plaintiff and class members that it contained ingredients expected of shortbread, like some amount of butter, instead of not having any butter, and believed that the shortbread taste was provided by butter, instead of artificial flavor.

104.  Defendant directly marketed the Product to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions distributed to resellers, and targeted digital advertising.

105.  Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires.

106.  Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant that it contained ingredients expected of shortbread, like some amount of butter, instead of not having any butter, and believed that the shortbread taste was provided by butter, instead of artificial flavor.

107.  Defendant's representations affirmed and promised that the Product contained

ingredients expected of shortbread, like some amount of butter, instead of not having any butter, and believed that the shortbread taste was provided by butter, instead of artificial flavor.

108. Defendant described the Product so Plaintiff and consumers believed it contained ingredients expected of shortbread, like some amount of butter, instead of not having any butter, and believed that the shortbread taste was provided by butter, instead of artificial flavor, which became part of the basis of the bargain that it would conform to its affirmations and promises.

109. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

110. This duty is based on Defendant's outsized role in the market for this type of Product, a trusted company known for its high quality products.

111. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

112. Plaintiff provided or will provide notice to Defendant, its agents, representatives, retailers, and their employees.

113. Plaintiff hereby provides notice to Defendant that it breached the express and implied warranties associated with the Product.

114. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

115. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

116. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Fraud

117. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained ingredients expected of shortbread, like some amount of butter, instead of not having any butter, and believed that the shortbread taste was provided by butter, instead of artificial flavor.

118. Moreover, the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity and deception, through statements and omissions.

119. Defendant knew of the issues described here yet did not address them.

120. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;
2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;
3. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;
4. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

5. Other and further relief as the Court deems just and proper.

Dated: June 14, 2022

                                              Respectfully submitted,

                                              /s/Spencer Sheehan
                                              Sheehan & Associates, P.C.
                                              Spencer Sheehan
                                              60 Cuttermill Rd Ste 412
                                              Great Neck NY 11021
                                              Tel: (516) 268-7080
                                              spencer@spencersheehan.com