IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GOLDIE TROUTT, Individually and on Behalf of all Others Similarly Situated,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>MONDELĒZ GLOBAL LLC,<br><br>　　　　　　Defendant. | Case No. 21-cv-01279-SPM |

## MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Pending before the Court is a Motion to Dismiss First Amended Class Action Complaint pursuant to Rules 12(b)(6) of the Federal Rules of Civil Procedure filed by Defendant Mondelēz Global LLC ("Mondelēz") (Doc. 7). A memorandum of law in support of the aforementioned motion was filed contemporaneously (Doc. 20). Plaintiff Goldie Troutt ("Troutt") filed a memorandum in opposition to the motion (Doc. 24) and Mondelēz replied (Doc.26). For the reasons set forth below, the Court **GRANTS** the Motion to Dismiss in its entirety.

## BACKGROUND

The following facts are taken from Troutt's amended complaint (Doc. 17) and are accepted as true for purposes of Mondelēz' motion to dismiss. FED. R. CIV. P. 10(c); *Arnett v. Webster,* 658 F.3d 742, 751-52 (7th Cir. 2011).

Mondelēz manufactures, labels, markets, and sells shortbread cookies ("cookies") (Doc. 17, ¶ 1). Troutt reproduced a picture of the cookie packaging in her amended complaint. A copy of said picture is set forth *supra*.



As shown, the background of the packaging is a yellow and white checker. The front label of the packaging contains the name "LORNA DOONE" in a large green font. There is also green writing on the bottom left of the front packaging regarding caloric breakdown and on the bottom right of the front packaging about package size/contents. Above the product name is a red rectangular-type shape with the words, "SHORTBREAD COOKIES" in white font. In the upper left hand corner is a red triangle with the brand name, "NABISCO", in white font within an oval.

Troutt also included a reproduction of the ingredient list from the cookie box.



Page 2 of 3

> **INGREDIENTS:** UNBLEACHED ENRICHED FLOUR (WHEAT FLOUR, NIACIN, REDUCED IRON THIAMINE MONONITRATE {VITAMIN B1}, RIBOFLAVIN {VITAMIN B2}, FOLIC ACID), SUGAR, CANOLA OIL, PALM OIL, CORN FLOUR, SALT, HIGH FRUCTOSE CORN SYRUP, BAKING SODA, SOY LECITHIN, CORNSTARCH, ARTIFICIAL FLAVOR.

According to Troutt, "[c]onsumers expect that a food identified as shortbread contains some butter" (¶ 23). However, "no butter is indicated on the ingredients list", which identifies vegetable oils, Canola Oil and Palm Oil - the third and fourth ingredients listed after flour and sugar, as the sole shortening agents (¶¶ 24, 25). Furthermore, Troutt cites to several definitions contained in various reference guides to support her contention that butter is a necessary ingredient in all shortbread cookies[1].

Troutt is a citizen of Olney, Richland County, Illinois, which is located within the Southern District of Illinois (¶ 65). Between June and July 2021, Troutt purchased the cookies on one or more occasion at Walmart, 1001 North West, Olney, IL 62450 (¶ 75). Troutt "believed and expected [the cookies] contained ingredients expected of shortbread, like some amount of butter" and "believed that the shortbread taste was provided by butter" (¶ 76). Troutt claims to have purchased [the cookies] "at or exceeding the" market value (¶79). She further claims that she would not have

---

[1] Plaintiff cites Dictionary.com, Lexico from Oxford Dictionary, the Oxford Dictionary, Collins Dictionary, Google Dictionary, and refers to commercial treatises as well P.R. Whitely, and Nicholas Malgieri to support her blanket allegation that "*All* forms of baked goods identified as shortbread are based un sugar, shortening, which includes some butter, and flour (Doc. 17, ¶¶ 7-17).

Page 3 of 4

"purchased [the cookies] if she knew the representations and omissions were false and misleading" or "would have paid less for it" (¶ 80).

Based on these allegations, Troutt brings this putative class action complaint against Mondelēz. She asserts four claims including: (1) violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"); (2) violations of various state consumer fraud acts; (3) breach of express warranty; and, (4) fraud (Doc. 30). Troutt seeks both injunctive and monetary relief (*Id.* at 15). Mondelēz moved to dismiss the First Amended Complaint in its entirety.

The Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Under CAFA, federal courts have jurisdiction over cases in which: (1) the class consists of 100 or more members, *see* 28 U.S.C. § 1332(d)(5)(B); (2) any plaintiff is a citizen of a state different from that of any defendant, 28 U.S.C. § 1332(d)(2)(A); and (3) the aggregate amount of the plaintiffs' claims exceeds $5 million, exclusive of interest and costs. 28 U.S.C. §§ 1332(d)(2), (d)(6). Here, Troutt alleges diversity exists because she is a citizen of Illinois and Mondelēz is "a Delaware limited liability company with a principal place of business in East Hanover, New Jersey, Norris County" (Doc. 17, p. 9).

Troutt seeks certification of the following two classes: (1) **Illinois Class:** All persons in the State of Illinois who purchased the cookies during the statutes of limitations for each cause of action alleged; and, **(2) Consumer Fraud Multi-State Class:** All persons in the States of North Dakota, Kansas, West Virginia, Wyoming, and Delaware, who purchased the cookies during the statutes of limitations for each

Page 4 of 5

cause of action alleged (Doc. 17, ¶ 85). Thus, it is reasonable to infer that this class includes more than 100 people. See *Tropp v. Prairie Farms Dairy, Inc.*, 2021 WL 5416639, at *1 (W.D. Wis. Nov. 19, 2021) ("[plaintiff] seeks to represent a class of consumers in Wisconsin, Illinois, Iowa, and Michigan who purchased the product at issue, so it is reasonable to infer that that the proposed class includes at least 100 members"). Troutt does not explain how the "aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs." (Doc. 17, ¶ 57). Nonetheless, Mondelēz has not challenged that there is at least $5,000,000 in controversy. Thus, for purposes of this Motion, the Court concludes Troutt has properly alleged subject matter jurisdiction. See *Ware v. Best Buy Stores, L.P.*, 6 F.4th 726, 732 (7th Cir. 2021) ("Normally, a plaintiff can meet [the] pleading requirement by simply alleging a plausible amount in controversy.").1

## LEGAL STANDARD

"To survive a motion to dismiss under 12(b)(6), a complaint must 'state a claim that is plausible on its face.' " *Adams v. City of Indianapolis,* 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 577 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams,* 742 F.3d at 728 (quoting *Ashcroft v. Iqbal,* 566 U.S. 662, 678 (2009)). "[I]t is not enough for a complaint to avoid foreclosing possible bases for relief: it must actually suggest that the plaintiff has a right to relief … by providing allegations that 'raise a right to relief above the speculative level.' " *E.E.O.C. v. Concentra Health*

*Servs., Inc.,* 496 F.3d 773, 777 (7th Cir. 2007) (citing *Twombly,* 550 U.S. at 555) (emphasis in original). The Court construes the complaint "in the light most favorable to the non-moving party, accept(s) well-pleaded facts as true, and draws all inferences in her favor." *Reynolds v. CB Sports Bar, Inc.,* 623 F.3d 1143, 1146 (7th Cir. 2010). "[L]egal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago,* 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal,* 566 U.S. at 678).

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b). This heightened pleading requirement was intended to protect against the "great harm to the reputation of a business firm or other enterprise a fraud claim can do." *Borsellino v. Goldman Sachs Grp., Inc.,* 477 F.3d 502, 507 (7th Cir. 2007). Thus, pursuant to Rule 9(b), a plaintiff must "describe the 'who, what, when, where, and how' of the fraud – 'the first paragraph of any newspaper story.' " *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7t Cir. 2016) (quoting *United States ex rel. Lusby v. Rolls-Royce Corp.,* 570 F.3d 849, 853 (7th Cir. 2009).

## ANALYSIS

### I.   ICFA CLAIM

The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") prohibits "unfair or deceptive acts or practices, including … deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with the intent that others rely upon the concealment

… in the conduct of any trade or commerce." 815 ILCS 505/1, *et seq*. Frequently, ICFA claims involve disputed questions of fact not suitable for dismissal at the pleading stage, however, a court may dismiss the complaint if the challenged statement is not misleading as a matter of law. *Rudy v. Family Dollar Stores, Inc.*, 583 F. Supp. 3d 1149, 1158 (N.D. Ill. 2022).

In order to state a claim under the ICFA, Troutt must allege: (1) a deceptive act or practice by Mondelēz, (2) Mondelēz' intent for Troutt to rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to her that was (5) proximately caused by the deception. *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 883 (7th Cir. 2005); *see also*, *Phila Indem. Ins. Co. v. Chi. Title Ins. Co.*, 771 F.3d 391, 402 (7th Cir. 2014) (citing *DeBouse v. Bayer AG,* 235 Ill.2d 544 (2009). As this claim relates to deceptive conduct (as opposed to unfair conduct), the heightened pleading standard in Federal Rule of Civil Procedure 9(b) applies. *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019). In other words, to prevail under the ICFA, Troutt must first show that there was a deceptive act or practice, then set forth the "who, what, when, where, and how. *Id.*

A statement is "deceptive" if it "creates a likelihood of deception or has the capacity to deceive." *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 940 (7th Cir. 2001). "[T]he allegedly deceptive [statement] must be looked upon in light of the totality of the information made available to the plaintiff." *Benson*, 944 F.3d at 646 (citation

omitted). *See also Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 761–62 (7th Cir. 2014).

"Courts apply a 'reasonable consumer' standard in evaluating the likelihood of deception." *Stemm v. Tootsie Roll Indus., Inc.*, 374 F. Supp. 3d 734, 740 (N.D. Ill. 2019) (citing *Mullins v. Direct Digital, LLC,* 795 F.3d 654, 673 (7th Cir. 2015)). This standard requires a "practical and fact-intensive approach to consumer behavior." *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 478 (7th Cir. 2020). Moreover, "[T]he reasonable consumer standard requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled". *Beardsall v. CVS Pharm., Inc.*, 953 F.3d 969, 973 (7th Cir. 2020) (emphasis added). In other words, the reasonable consumer standard requires more than a mere possibility that a label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner. *Benson,* 944 F.3d at 646. "This standard requires a showing of probable, not possible, deception." *In Re: 100% Grated Parmesan Cheese Marketing and Sales Practices Litigation,* 275 F.Supp.3d 910, 921 (N.D. Ill., August 24, 2017) *(*citing *Zlotnick v. Premier Sales Group, Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007). Put another way, "a representation does not become 'false and deceptive' merely because it will be unreasonably misunderstood by an insignificant and unrepresentative segment of the class of persons to whom the representation is addressed." *Id.* (citing *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012)).

Page 8 of 9

Courts considering "deceptive advertising claims should take into account all the information available to consumers and the context in which that information is provided and used." *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 476 (7th Cir. 2020). "What matters most is how real consumers understand and react to the advertising." *Id.* "[W]here plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified." *Id.* at 477.

In this case, Troutt claims that the cookie packaging is "misleading to consumers", in part, because "despite an expectation that shortbread contains some butter, the [cookies] contain no butter" (Doc. 17, ¶ 2). Plaintiff makes numerous leaps in her amended complaint, from shortbread, to Scotland, to Lorna Doone[2], all for the premise that the packaging implies the presence of butter in the cookies. However, the cookie packaging does not contain the word butter, nor does the ingredient list identify butter.

While it is true that an "ingredient list" does not automatically immunize defendants from suits for ambiguous front labels, this Court is more concerned with the front of the package and whether the package itself is deceptive. *See, e.g., Bell*, 982 F.3d at 476; *see also York v. Andalou Nats., Inc.*, No. 16-cv-00894-SMY-DGW (S. D. Ill. Dec. 8, 2016) (collecting cases); *see also Terrazzino v. Wal-Mart Stores, Inc.*, 335 F. Supp. 3d 1074, 1084 (N.D. Ill. 2018). Furthermore, this Court is not conceding that

---

[2] Contrary to Troutt's assertions, Lorna Doone was the fictional heroine in the historical novel of the same name set in 17th century Exmore, which is a remote area of Devon, England, not Scotland, and written by English, not Scottish, author, Robert Doddridge Blackmore in 1869.

there is an ambiguity in the packaging. Again, Troutt jumped to the conclusion that the cookies contained butter without any supporting foundation.

The question is simple – would a reasonable consumer leap to the same conclusion infer that the cookies contained butter merely because they were identified on the label as "Shortbread"? This Court thinks not. Indeed, it is a stretch for reasonable consumers to assume that a product contains butter merely because it is identified as "shortbread". Troutt's understanding of the cookies' label is unreasonable and fanciful.

Numerous district courts within this circuit have also answered this question and recently dismissed deceptive advertising claims finding that the labels are unambiguous and noting that a reasonable consumer would not be misled. *See Reinitz v. Kellogg Sales Co.*, 2022 WL 1813891, at *4 (C.D. Ill. June 2, 2022) (granting dismissal and finding that "[p]laintiff fails to support that a chocolate-tasting fudge product made from oils and whey would mislead a reasonable consumer"); *Chiappetta v. Kellogg Sales Co.*, 2022 WL 602505, at *4 (N.D. Ill. Mar. 1, 2022) (although the package included the word "strawberry" and a picture of half of a strawberry with a Pop-Tart oozing red filling "no reasonable consumer could conclude that the filling contains a certain amount of strawberries based on the package's images and its use of the term 'Strawberry'"); *Rice v. Dreyer's Grand Ice Cream, Inc.*, 2022 WL 3908665, at *4 (N.D. Ill. Aug. 30, 2022) (noting that "a reasonable consumer would not understand the front label to convey that the ice cream's coating consists only of chocolate and almonds").

Like the plaintiffs in these cases, Troutt fails to plausibly allege that the cookie label would lead a reasonable consumer to believe the cookie's contained butter. Her ICFA claim therefore must be dismissed.

## II. State Consumer Protection Statutes

In addition to an Illinois class, Troutt seeks certification of a consumer fraud multi-state class consisting of "persons in the States of North Dakota, Kansas, West Virginia, Wyoming, and Delaware" (Doc. 17, ¶ 85). Troutt claims the consumer fraud acts in those states are similar to the [ICFA] in that they "prohibit the use of unfair or deceptive business practices" (¶ 98).

Troutt's claims for violations of out of state consumer fraud statutes are also premised on the same theory of deception as her ICFA claims. Although Troutt attempts to reserve their rights to assert their consumer protection claims under their respective acts, Troutt asserts that Mondelēz "intended that members" of the multi-state class "would rely upon its deceptive conduct" and because of defendant's "unfair or deceptive acts or business practices" sustained damages (¶¶ 100, 101).

Because this Court has found that Troutt has failed to sufficiently plead a colorable ICFA claim, it finds the same as to any claims alleged under similar state statutes.

## III. Express Warranty

Under Illinois law, a description of goods can create an express warranty: "Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description". 810 ILCS 5/2-313.

With this statutory overly, the express warranty is a "creature of contract". *Collins Co. v. Carboline Co.*, 125 Ill.2d 498 (1988). To adequately plead a breach of express warranty, a plaintiff must allege: "(1) the terms of the warranty; (2) a breach or failure of the warranty; (3) a demand upon the defendant to perform under the terms of the warranty; (4) a failure by the defendant to do so; (5) compliance with the terms of the warranty by the plaintiff; and (6) damages measured by the terms of the warranty." *Lambert v. Dollar Gen. Corp.*, 2017 WL 2619142, at *2 (N.D. Ill. June 16, 2017).

Troutt claims that Mondelēz expressly warranted that the cookies "contained ingredients expected of shortbread, like some amount of butter, instead of not having any butter" (Doc. 17, ¶ 103). However, the label itself does not identify butter nor does it indicate that butter is an ingredient in the cookies. Troutt merely *believed* the cookies contained butter (*Id.*).

Clearly, there was no breach as there was no deception by Mondelēz; therefore, any claims for breach of express warranty are dismissed.

**IV. Fraud**

To state a claim for common-law fraud, a plaintiff must plead: (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement. *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 841 (7th Cir. 2007). "*Scienter*, knowledge by the defendant that a

statement he has made is false, is an essential element of common-law fraud." *Id*. at 841–42.

Troutt never alleged specific facts showing that Mondelēz had the requisite scienter to defraud; however, she argues her fraud count is viable because Rule 9(b) allows for "intent, knowledge, and other conditions of a person's mind to be alleged generally". This Court does not accept that posit Indeed, there is no allegation that Mondelēz intentionally mislabeled the cookies to defraud consumers. Troutt claims that she "adequately alleged" that the Rule 9(b) pleading requirements are met because she alleges the "who, what, where, when, and how" of the fraud. With respect to fraud, Sanders alleges that "[Hillshire] mispresented and/or omitted the attributes of the qualities of the Product" and that "[Hillshire's] fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations." These conclusory allegations fall short of Rule 9(b)'s pleading requirements. Accordingly, Hillshire's motion is granted with respect to Sanders' fraud claim.

V. **Injunctive Relief**

Although the motion to dismiss has been granted in its entirety, Troutt also seeks injunctive relief within her Prayer for Relief (Doc. 17, p. 15). A plaintiff must meet three requirements to establish that she has standing to bring a lawsuit: (1) injury in fact, (2) a causal connection between the injury and the defendant's conduct, and (3) redressability. *Scherr v. Marriott Int'l, Inc.,* 703 F.3d 1069, 1074 (7th Cir. 2013) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)). "[T]o establish injury in fact when seeking prospective injunctive relief, a plaintiff must

allege a 'real and immediate' threat of future violations of their rights …" Id. (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)); see also *Kensington's Wine Auctioneers & Brokers, Inc. v. John Hart Fine Wine, Ltd.*, 909 N.E.2d 848, 858 (Ill. App. Ct. 2009) ("To be eligible for injunctive relief under the Deceptive Practices Act, a plaintiff must show the defendant's conduct will likely cause it to suffer damages in the future.").

Troutt asserts that she "intends to, seeks to, and will purchase the [cookies] again when she can do so with the assurance that [the cookies] representations are consistent with its attributes, features, representations and/or composition." (Doc. 17, ¶ 83). But merely purchasing the cookies does not trigger Troutt's injury. Her injury lies in purchasing cookies under the influence of an allegedly deceptive label. There is no chance she can claim to be harmed in the future – tricked again by "shortbread"– as she now knows that the ingredient list shows the cookies true composition. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 741 (7th Cir. 2014) ("Since [plaintiff] is now aware of [defendant's] sales practices, [plaintiff] is not likely to be harmed by the practices in the future."). As such, Troutt lacks standing to pursue injunctive relief; her claim will be dismissed accordingly.

## CONCLUSION

For the reasons set forth above, and because Troutt has failed to plausibly allege any cause of action, defendant Mondelez Global LLC's motion to dismiss is **GRANTED** in its entirety. Because Troutt has taken advantage of the opportunity to amend her complaint in accordance with *Runnion ex rel. Runnion v. Girl Scouts of*

*Greater Chicago and Northwest Indiana,* 786 F.3d 510 (7th Cir. 2015), the First Amended Class Action Complaint is dismissed with prejudice and any potential motion for class certification is moot at this time.

**IT IS SO ORDERED.**

**DATED: <u>October 31, 2022</u>**

<u>*s/ Stephen P. McGlynn*</u>
**STEPHEN P. McGLYNN**
**U.S. District Judge**
